# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

MICHELLE ROSAS, as Personal Representative for the Next-of-Kin of Nathan Rosas, Deceased

Case No._____

Plaintiff,

v.

HOLLY TUYLS LPC, in her individual and official capacity, OFFICER RANDY BERRY, in his individual and official capacity, OFFICER JAKE SIMON, in his individual and official capacity, and WASHINGTON COUNTY,

Defendants.

---

## CIVIL RIGHTS COMPLAINT

## JURY TRIAL DEMANDED

### I. PARTIES

1. Plaintiff Michelle Rosas ("Ms. Rosas") is a resident of the State of Minnesota and has been appointed as personal representative over her deceased son, Nathan Rosas's ("Rosas"), estate. At the time of his death, Rosas was incarcerated at the Washington County Jail ("WCJ"), located in West Bend, Wisconsin.

1

2. Upon information and belief, all named Defendants are residents of the State of Wisconsin and were acting under color of state law in their respective individual and official capacities.

3. In addition, based upon information and belief, during the relevant time period, all Defendants were employed by the Washington County Jail ("WCJ").

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal claims brought herein pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or a substantial part of the events or omissions giving rise to the claims occurred in this District, and all Defendants reside in this District.

## II. FACTUAL ALLEGATIONS

### Rosas's Mental Health History Before Confinement at WCJ

7. In the weeks leading up to his detention at WCJ, Rosas showed disturbing signs of extreme mental instability and suicidal ideation.

8. On July 24, 2025, Rosas was treated at the Virginia Beach Psychiatric ("VBP") treatment center in Virginia Beach, VA. Records from this facility confirmed psychosis as the reason for his admission. Rosas's discharge records confirmed a diagnosis of bipolar disorder, psychosis, and cannabis use disorder. To treat

2

these conditions, doctors prescribed Rosas several medications which included SINEquan, Invega and Depakote. Rosas was discharged from VBP on July 28, 2025.

9. On September 17, 2025, two Grafton City police officers filed "Statement[s] of Emergency Detention by Law Enforcement Officer[s]" against Rosas in Ozaukee County Circuit Court. The officers' purpose behind these filings was to initiate a commitment proceeding against Rosas. One officer's statement described, in vivid fashion, Rosas's expressed suicidal ideation which included crashing his car, buying a rope from a hardware store, and asking officers to

kill him.

STATE OF WISCONSIN, CIRCUIT COURT, _Ozaukee_ COUNTY | For Official Use

IN THE MATTER OF THE CONDITION OF

_Nathan Rosas_
Name of Subject

_5/26/1997_
Date of Birth

**Statement of Emergency Detention by Law Enforcement Officer**

Court Case No. _____

Law Enforcement Agency No. _25- 010644_

- *File this statement with the court immediately and with the detention facility upon admission. A probable cause hearing must be held within 72 hours after the subject is taken into custody. (In Milwaukee County, file this statement with detention facility only.)*
- *Please print or type all information below. All blanks must be filled in.*

I am a law enforcement officer and have cause to believe that:
- The subject is mentally ill, drug dependent, or developmentally disabled.
- The subject evidences behavior which constitutes a substantial probability of physical harm to self or to others, or as otherwise set forth in §51.15(1), Wisconsin Statutes.
- Taking the subject into custody is the least restrictive alternative appropriate to the subject's needs

My belief is based on specific and recent dangerous acts, attempts, threats, omissions, and/or statements made by the subject as observed by me or reliably reported to me as stated below:

Dangerous Behavior

When: _Wednesday   9/17/2025_

Where: _Aurora Medical center_

Describe Behavior: _Nathan reported he is in chronic pain for a medical condition and would rather be dead. He stated he could crash his car or buy a rope from a hardware store. He asked 2 law enforcement officers to use their firearms to kill him. Nathan stated he would kill himself if the hospital could not stop the pain he's in. Nathan also made threats to harm anyone who will not help stop his pain._   ☐ See attached page

Witnesses to the dangerous behavior: (including officers who observed behavior)

10. The Ozaukee County Probate Court scheduled a commitment hearing for

Rosas on September 22, 2025. While awaiting this hearing, Rosas was

4

detained at the Winnebago Mental Health Institute ("WHI") in Winnebago, WI. Rosas stayed at WHI from September 18, 2025 to September 23, 2025.

11. At WHI, doctors diagnosed Rosas with depressive disorder, severe cannabis use disorder, ADHD and Personality Disorder. For these conditions, doctors prescribed Rosas additional medications.

12. On September 27, 2025, Washington County Sheriff officers found Rosas lying in the grass on the west shoulder of Jackson Drive in the city of Jackson, WI. Rosas had been involved in a vehicle crash. He told officers at the scene that he had been sexually assaulted and as a result sustained a head injury. But after investigating the incident, officers determined that Rosas had not been assaulted and in fact had attacked two individuals who he had been living with. Rosas was charged with, among other crimes, aggravated battery. After arresting Rosas, Officers took Rosas to a local hospital where doctors evaluated his head injury. At this visit, however, doctors did not perform any type of mental health assessment on Rosas.

### Rosas's Screening at WCJ

13. That same day, Rosas was taken to WCJ. At admission, Officer Randy Berry ("Officer Berry") filled out WCJ's "CMS Medical Screening" form which confirmed Officer Berry's observations of Rosas and conversations with him during the jail screening process. In this form, Officer Berry noted his belief that Rosas was under the influence of drugs and/or alcohol at the time. He also noted that Rosas had been prescribed the drugs Lisdexamfetamine and

5

Duloxetine for his ADHD and depression. During the screening process,

Officer Berry further noted that two weeks prior, Rosas had been admitted to

WHI and had expressed suicidal ideation:

 Washington County Sheriff's Office
500 Rolfs Avenue
West Bend, WI 53090
Phone: (262) 335-4378
Fax: (262) 335-4429

---

**CMS Medical Screening**

---

Approximate date of last seizure:

**Stated he was during incident earlier today.**

| | | | |
|---|---|---|---|
| 14) Do you have Diabetes? | | ☐ YES | ☑ NO |
| 15) Do you have Hepatitis? | | ☐ YES | ☑ NO |
| 16) Do you have a painful dental condition? | | ☑ YES | ☐ NO |

Where?

**All over - Pain due to incident tonight.**

| | | | |
|---|---|---|---|
| 17) Do you use drugs or alcohol? | | ☑ YES | ☐ NO |

What types and how often?

**Alcohol & Cocaine - Occasionally**

| | | | |
|---|---|---|---|
| 18) Have you been treated for alcohol or drug abuse? | | ☐ YES | ☑ NO |
| 19) Have you been hospitalized recently? | | ☑ YES | ☐ NO |

Where, when, and why?:

**About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself.  Admitted to Mental health hospital for 6 days at Winnebago Mental Health.**

| | | | |
|---|---|---|---|
| 20) Are you allergic to any food or medication? | | ☑ YES | ☐ NO |

What are you allergic to and how does it effect you?:

**Gluten - Stated he needs to be tested again to be certain.  **

| | | | |
|---|---|---|---|
| 21) Are you currently on a special diet? | | ☑ YES | ☐ NO |

Mark all that apply:

☐ A) Diabetic
☐ C) Vegatarian / Vegan
☐ C) Pregnancy
☐ D) Kosher
☐ E) Religious
☐ F) Soft Diet
☐ G) Liquid Diet
☐ H) Bland Diet
☑ I) Other

Explain:

**High protein, High Fiber and no Gluten**

| | | | |
|---|---|---|---|
| 22) Do you have any other medical problems? | | ☑ YES | ☐ NO |

List and Explain:

**ADD<br>
Depression<br>
Constipation<br>
Hemorrhoids <br>
IBS<br>
Slight hearing loss<br>
Suicidality  - About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself.  Admitted to Mental health hospital for 6 days at Winnebago Mental Health. **

| | | | |
|---|---|---|---|
| 23) Do you have health insurance? | | ☑ YES | ☐ NO |

Who is the provider?

**VA**

| | | | |
|---|---|---|---|
| 24) Do you have a personal doctor? | | ☑ YES | ☐ NO |



**CMS Medical Screening**                                                Printed On: 09/28/25 00:06

Approximate date of last seizure:

**Stated he was during incident earlier today.**

14) Do you have Diabetes? ☐ YES ☑ NO

15) Do you have Hepatitis? ☐ YES ☑ NO

16) Do you have a painful dental condition? ☑ YES ☐ NO

Where?

**All over - Pain due to incident tonight.**

17) Do you use drugs or alcohol? ☑ YES ☐ NO

What types and how often?

**Alcohol & Cocaine - Occasionally**

18) Have you been treated for alcohol or drug abuse? ☐ YES ☑ NO

19) Have you been hospitalized recently? ☑ YES ☐ NO

Where, when, and why?:

**About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself. Admitted to Mental health hospital for 6 days at Winnebago Mental Health.**

20) Are you allergic to any food or medication? ☑ YES ☐ NO

What are you allergic to and how does it effect you?:

**Gluten - Stated he needs to be tested again to be certain.  **

21) Are you currently on a special diet? ☑ YES ☐ NO

Mark all that apply:

☐ **A) Diabetic**

☐ **C) Vegatarian / Vegan**

☐ **C) Pregnancy**

☐ **D) Kosher**

☐ **E) Religious**

☐ **F) Soft Diet**

☐ **G) Liquid Diet**

☐ **H) Bland Diet**

☑ **I) Other**

Explain:

**High protein, High Fiber and no Gluten**

22) Do you have any other medical problems? ☑ YES ☐ NO

List and Explain:

**ADD\<br\>**
**Depression\<br\>**
**Constipation\<br\>**
**Hemorrhoids \<br\>**
**IBS\<br\>**
**Slight hearing loss\<br\>**
**Suicidality  - About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself.  Admitted to Mental health hospital for 6 days at Winnebago Mental Health. **

23) Do you have health insurance? ☑ YES ☐ NO

Who is the provider?

**VA**

24) Do you have a personal doctor? ☑ YES ☐ NO

14. During this screening, Officer Berry also asked Rosas a series of questions to determine whether he was presently suicidal. Rosas's answers to these questions confirmed that he was continuing to struggle with thoughts of

8

suicide:

 Washington County Sheriff's Office
500 Rolfs Avenue
West Bend, WI 53090
Phone: (262) 335-4378
Fax: (262) 335-4429

**CMS Mental Health**    Printed On: 09/28/25 00:07

**Booking# :** 25-003002    **Inmate :** Rosas, Nathan Paul    **SPN :** 66770

**Interview Dttm :** 09/27/2025 23:58    **Interviewed By :** 1198-Berry, Randy Evan

### Suicidal Ideation and Behavior

1) Have you wished you were dead or wished you could go to sleep and not wake up?    ☑ YES    ☐ NO

1a) Explain: When, Where, and How?

Within the last day - stated it changed once he "got a body count" referring to the two people he assaulted and believes he killed them. Stated his suicidal ideation could change any minute. <br>
About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself.  Admitted to Mental health hospital for 6 days at Winnebago Mental Health. 

2) Have you actually had any thought of killing yourself?    ☑ YES    ☐ NO

Within the past Month?    ☑ YES    ☐ NO

2a) Explain: When, Where, and How?

Within the last day - stated it changed once he "got a body count" referring to the two people he assaulted and believes he killed them. Stated his suicidal ideation could change any minute. <br>
About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself.  Admitted to Mental health hospital for 6 days at Winnebago Mental Health. 

3) Have you ever had any thoughts about HOW you might kill yourself?    ☑ YES    ☐ NO

Within the past month?    ☑ YES    ☐ NO

4) Have you ever actually worked out a detailed PLAN for how you would act on any suicidal thoughts?    ☑ YES    ☐ NO

Within the past Month?    ☐ YES    ☑ NO

5) Have you ever had any INTENT to act on any suicidal thought?    ☑ YES    ☐ NO

Within the past Month?    ☑ YES    ☐ NO

!!!) ***PLACE ON 15 MINUTE SPECIAL WATCH, NOTIFY SUPERVISOR***

6) Are you CURRENTLY thinking about killing or harming yourself?    ☐ YES    ☑ NO

!!!) If "No" for 6, but "Yes" for 3, 4, OR 5 within past month place on "Special Watch".

7) Have you ever done anything, started to do anything, or prepared to do anything to end your life?    ☑ YES    ☐ NO

Within the Past Month?    ☐ YES    ☑ NO

Within the Past Year?    ☑ YES    ☐ NO

!!!) ***PLACE ON 15 MINUTE SPECIAL WATCH, NOTIFY SUPERVISOR***

8) Have you ever attempted to harm yourself in a jail, prison or mental health facility?    ☑ YES    ☐ NO

!!!) ***PLACE ON 15 MINUTE SUICIDE WATCH, NOTIFY SUPERVISOR***

8a) Explain: When, Where, and How?

Stated he was in a rage because people wouldn't feed him so he punched a wall at the Hennepin County Jail.  No broken bones. 

9) Would you like to speak to the Mental Health Worker?    ☑ YES    ☐ NO

!!!) ***Send MHR to Mental Health Worker

!!!) If "Yes" for 7 WITHIN past Month place on "15 Minute Suicide Watch". Notify your Supervisor.

!!!) If "Yes" to 7, and attempt was MORE than a MONTH but within the last year, Place on "Special Watch". Notify your Supervisor.

!!!) ***ANY HISTORY OF ATTEMPT WHILE INCARCERATED PLACE ON SUICIDE WATCH, NOTIFY SUPERVISOR!!!***

### Officer Observation

1) Is the Subject Under the Influence of any Alcohol or Drugs?    ☑ YES    ☐ NO

15. In this same screening form, Officer Berry described Rosas's mood as irritable, and that his behavior appeared to be "out of touch with reality." He further recorded Rosas displaying active gestures of suicide and threats of self-harm, and he expressed concern that Rosas was "very mentally unstable," and was not answering his questions truthfully.

Washington County Sheriff's Office
500 Rolfs Avenue
West Bend, WI 53090
Phone: (262) 335-4378
Fax: (262) 335-4429

**CMS Mental Health**                                                                Printed On: 09/28/25 00:07

1a) Explain:

**Suspected but denies any drug use.**

2) How does the person's mood appear to you?

- ☐ A) Depressed (sad, tearful)
- ☐ B) Anxious (worrisome)
- ☐ C) Angry (outraged)
- ☑ D) Irritable (agitated)
- ☐ E) Elated (unusually high spirits)
- ☐ F) Isolated or withdrawn
- ☐ G) Normal for the situation

3) Does the subject display any notable behaviors?

- ☑ A) Behavior which seems to be out of touch with reality.
- ☐ B) Talking to self (more than seems normal).
- ☐ C) Unusually calm after periods of agitation.
- ☐ D) Tremors or shaking.
- ☐ E) Body or headache complaints.
- ☐ F) Panic attacks.
- ☐ G) Physical complaints that seem unreal or impossible such as their heart has stopped.
- ☐ H) None observed.

| | | |
|---|---|---|
| 4) Any active suicidal gestures or current threats of self harm? | ☑ YES | ☐ NO |

4a) Explain:

**Assaulted 2 people prior to arrival resulting in them being placed in Hospital.  Seems very mentally unstable.  Answers the mental health questions in a roundabout way.  Unsure how honest he's being. **

| | | |
|---|---|---|
| 5) Any talk of threats of harm toward others? | ☑ YES | ☐ NO |

5a) Explain:

**Assaulted 2 people prior to arrival resulting in them being placed in Hospital.  Seems very mentally unstable. **

| | | |
|---|---|---|
| 6) Any aggressive acts observed? | ☐ YES | ☑ NO |
| 7) Any other self destructive acts? (head banging, cutting, etc.) | ☐ YES | ☑ NO |
| 8) Did the subject make suicidal statements to anyone? | ☐ YES | ☑ NO |
| 9) Was the subject assessed by Mental Health Professional prior to arrival at Jail? | ☐ YES | ☑ NO |
| 10) Is the subject currently under the care of a psychiatric doctor? | ☑ YES | ☐ NO |

10a) Doctor's Name?

**Dr. Earl Smith – VA**

Additional Information:

**FOLLOW THROUGH**

1) *IF BASED ON YOUR OBSERVATION YOU HAVE REASON TO BELIEVE TO UPGRADE TO SUICIDE or SPECIAL WATCH, *DOCUMENT AND NOTIFY YOUR SUPERVISOR!*

2) *ANY FORM OF WATCH, MAKE COPY AND FORWARD TO IN-HOUSE MENTAL HEALTH*

10

16. Based on his answers to the screening form questions, Officer Berry placed Rosas on a 15-minute suicide watch. This meant that WCJ officers were required to monitor Rosas and check on his welfare every 15 minutes. Officer Berry believed that Rosas should be placed on suicide watch because of his "frequent thoughts of self-harm."

17. On September 30, 2025, Rosas was evaluated at WCJ by Licensed Professional Counselor ("LPC") Holly Tuyls ("Ms. Tuyls"). Ms. Tuyls was aware of Rosas's prior commitment at WHI and the circumstances surrounding his commitment. After seeing Rosas, Ms. Tuyls recommended continuing him on suicide watch as he had "made several suicidal" statements to her during her evaluation. In her record, Ms. Tuyls also emphasized that Rosas was suffering from "severe mental health concerns" and that he had told her about his prior suicide attempts.

18. The next day, however, on October 1, 2025, despite there being no meaningful change in Rosas's condition, Ms. Tuyls inexplicably decided to not only remove Rosas from suicide watch, but to remove him from any type of special watch or observation. Ms. Tuyls made this decision even though Rosas had told her on this date that he was still struggling with "chronic suicidal thoughts." Ms. Tuyls rationalized her decision on the basis that on this date, Rosas denied a "specific" suicidal "plan." However, in her note, she also acknowledged that Rosas told her during this visit: "there are multiple ways to do it when you think about it." Ms. Tuyls removed Rosas from special watch

11

and observation while being ignorant of the specific mental health issues he was dealing with. She removed Rosas from special observation without establishing a plan of care for him, or making any plans to reassess him in the future.

## Mental Health Referral

| Name | SPIN# | D.O.B |
|---|---|---|
| Rosas, Nathan | 66770 | 5/26/1997 |

**Current watch:**
- [✔] 15 minute Suicide watch (smocked)
- [ ] 15 minute Special watch
- [ ] 30 minute observation
- [ ] None

**Housing:** AR-8

**Reason for referral:**  Assessment Requested ◉    Informational Only ○

Had thoughts within the last day - stated it changed once he "got a body count" referring to the two people he assaulted and believes he killed them. Stated his suicidal ideation could change any minute. About 2 weeks ago - ER @ Aurora for chronic pain and stated fix this or I'm gonna kill myself. Admitted to Mental health hospital for 6 days at Winnebago Mental Health. Seems to have homicidal ideation - When talking about his "body count" from tonight, it seems that he is super proud of it. Definitely some unknown mental health issues on board.

**Referred by:** Berry #235

**Date / Time:** 9/28/25 @ 0020

**Assessment:**
Client reports chronic suicidal thoughts but denies a specific plan however, said there are multiple ways if "you think about it." He denies any intent and said he tried to tie a belt around his neck about 8-12 months ago but "his body wasn't ready." Client appears to have some unknown mental health issues but denies any safety concerns, intent to harm others, or hallucinations.

**Follow up plan:**
Writer recommends discontinuing the client's watch as he denies current safety concerns and has not attempted to harm himself while in jail.

**\*\*\* For Medical Staff Only \*\*\***

**Recommendations:**
- [ ] 15 minute Suicide watch (smocked)
- [ ] 15 minute Special watch
- [ ] 30 minute observation
- [✔] Discontinue watch / Watch not Recommended

| Completed by: _[signature]_ LPC. SAC | Date / Time: 10/1/2025  1114 |
|---|---|
| Reviewed by: _[signature]_ Sgt. Simon | Date / Time: 10/1/25  1118 |

19. Despite Ms. Tuyls's recommendation, on October 1, 2025, WCJ staff kept Rosas on special watch because that same day, Officer Jake Simon ("Officer

12

Simon") observed Rosas walking around in his cell with nothing on but a t-shirt. Officer Simon believed that this behavior was abnormal, and for this reason kept Rosas on special watch and did not place him in general population. Officer Simon, however, never told Ms. Tuyls or anyone else what he observed, nor did he make any attempt to have Rosas reevaluated by any WCJ staff. Officer Berry was also aware of this incident but, like Officer Berry, made no efforts to have Rosas reevaluated.

### Rosas's Suicide

20. Rosas remained in a segregated unit until October 6, 2025, when he was released to general housing. From October 1, 2025 to October 6, 2025, Rosas's mental health condition was never reassessed by Ms. Tulys or anyone else.

21. After being moved to general population, Rosas was placed in a cell on the top floor in the unit he was assigned to. On October 7, 2025, Rosas left his cell, placed his hands in a praying motion, climbed on top of the railing and then jumped head-first to the floor. As a result of the impact, Rosas fractured bones in his skull and spine. He was taken to the hospital where he later died from these injuries.

22. At the time of Rosas's death, WCJ policies prohibited staff from booking inmates into the jail who showed obvious signs of mental illness. *See* WCJ Policy 353.144(B). Instead, these inmates were to be screened and/or treated at a medical or mental health care facility first before being booked into the

13

jail. *Id.* At the time of Rosas's death, WCJ policies also required that suicidal inmates be placed on "intensive supervision." WCJ Policy 353.181(II).

## IV. CAUSES OF ACTION

## COUNT I - 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE

### *(Holly Tuyls, LPC, Officer Randy Berry, Officer Jake Simon)*

23. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

24. Ms. Tuyls, acting under color of state law, had a constitutional duty to protect Rosas from known and substantial risks of serious harm, including suicide.

25. Ms. Tuyls knew that there was a strong likelihood that Rosas could commit suicide based upon what she knew about his mental health history, the suicidal ideations he expressed during intake, and the suicidal ideations Rosas expressed to Ms. Tuyls directly during their encounters.

26. Yet, despite this knowledge, Ms. Tuyls, inexplicably, removed Rosas from special observation even after Rosas told her that he was continuing to struggle with "chronic suicidal thoughts," and that he knew of "multiple ways" he could commit suicide. She removed Rosas from special observation without establishing for him a plan of care or making any plans to reassess him in the future. This arbitrary decision by Ms. Tuyls had no clinical basis. And it represented a failure by Ms. Tuyls to take reasonable measures to prevent Rosas from committing suicide. In short, this decision

14

by Ms. Tuyls constituted deliberate indifference.

27. In addition, knowing that there was a substantial likelihood that Rosas could commit suicide, Ms. Tuyls failed to arrange to have Rosas screened or treated at a medical or mental health facility before officers formally booked him into WCJ, which WCJ policy required. This failure also constituted deliberate indifference.

28. Officer Berry knew that there was a substantial likelihood that Rosas could commit suicide based upon what he knew about Rosas's mental health history, the suicidal ideations Rosas expressed during screening, his own evaluations of Rosas, and his knowledge of the October 1, 2025 incident involving Rosas.

29. Nevertheless, despite this knowledge, Officer Berry failed to arrange to have Rosas screened and or treated at a medical or mental health facility before booking him into the jail. In addition, Officer Berry failed to have Rosas reevaluated by a licensed mental health provider after learning of Rosas's abnormal behavior in his cell on October 1, 2025. These failures constituted deliberate indifference.

30. Finally, Officer Simon knew that Rosas had been placed on suicide watch, and knew that Ms. Tuyls had discontinued Rosas from suicide watch. Instead of discontinuing Rosas from suicide watch, Officer Simon placed Rosas on a heightened watch which required staff to check on him every thirty minutes. Officer Simon placed Rosas on this watch because he had

15

observed Rosas exhibiting odd behavior such as walking around in his cell with only his t-shirt on.

31. Despite, however, Officer Simon's knowledge of Rosas's heightened suicide risk, he never told Ms. Tuyls or anyone else about the behavior he observed from Rosas. And he made no effort to have Rosas reevaluated by WCJ mental health staff before releasing him to general population. These inactions constituted deliberate indifference, because they represented a failure on Officer Berry's part to take reasonable measures to prevent Rosas's suicide.

32. All of these failures, on behalf of Ms. Tuyls and Officers Berry and Simon to take reasonable measures to prevent Rosas's suicide, constituted deliberate indifference to Rosas's constitutional rights under the Eighth and/or Fourteenth Amendments.

33. As a direct and proximate result of these failures, Rosas suffered unnecessary pain, suffering, and death, and his next-of-kin have suffered compensable losses.

## COUNT II -CIVIL RIGHTS VIOLATIONS MONELL V. DEPARTMENT OF SOCIAL SERVICES
### (*Washington County*)

34. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

35. At the time of Rosas's death, WCJ policy prohibited officers from booking inmates into the jail who showed obvious signs of mental illness. *See* WCJ

16

Policy 353.144(B). Instead, these inmates were to be screened and or treated at a medical or mental health care facility first before being booked into the jail. *Id.* At the time of Rosas's death, WCJ policy also required that suicidal inmates be placed on "intensive supervision." WCJ Policy 353.181(II).

36. These policies were obviously implemented to prevent inmates from committing suicide. However, in their treatment of Rosas, neither of these policies were followed by WCJ staff. Rosas was booked into WCJ despite his unstable mental state, and he was removed from intense supervision even after telling staff that he was continuing to struggle with "chronic suicidal thoughts."

37. The failure of WCJ staff to follow their own policies relating to high suicide risk inmates proves that before Rosas's death, WCJ was not adequately training its staff.

38. Furthermore, the facts of this case also reveal that WCJ's supervision/discipline of its staff, at the time of Rosas's death, was constitutionally substandard as there is no evidence that the individual defendants in this case or anyone else was ever disciplined or retrained on how to follow WCJ's suicide prevention policies after Rosas's death.

39. WCJ knew that their failures to properly train and or supervise/discipline their staff on their own suicide prevention policies would result in unnecessary inmate suicides occurring at their facility. Rosas is the unfortunate example of this.

40. WCJ's failure to properly train and or supervise its staff is what caused its

17

staff's failure to take reasonable measures to prevent Rosas's suicide.

## COUNT III – NEGLIGENCE/WRONGFUL DEATH (Wis. Stat. § 895.04)
### (*All Defendants*)

41. Defendants owed a reasonable duty of care to Rosas while he was in their custody.

42. Defendants breached this duty of care by, having knowledge of Rosas's high risk of suicide, not admitting him into a medical or mental health facility before booking him into the jail, prematurely removing him from suicide watch and or special observation, not establishing a plan of care for him, and failing to have Rosas reevaluated by a qualified mental health professional before releasing him to general population.

43. Under the doctrine of *Respondeat Superior*, Washington County is liable for the negligent actions of its employees that were performed within the scope of their employment.

44. As a direct and proximate result of the Defendant's negligent actions, Rosas committed suicide which has resulted in financial harm to his next-of-kin.

## V. DAMAGES

45. As a direct result of Defendants' conduct, Plaintiff and A.D.'s next-of-kin have suffered damages including emotional distress, loss of life, loss of familial relationship, and funeral/burial expense.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award

18

judgment against Defendants as follows:

1. That this Court finds that all Defendants committed acts and omissions constituting violations of the Eighth and Fourteenth Amendments to the United States Constitution, and that Defendants were negligent;

2. As to each and every Count above, a money judgment against all Defendants for compensatory and punitive damages in an amount yet to be determined, together with costs, including reasonable attorney fees, and prejudgment interest and disbursements;

3. For such other and further relief as this Court may deem just and equitable.

Dated: March 17, 2026

Respectfully Submitted,
By: /s/ Oliver E. Nelson, III
Oliver E. Nelson, III (0347280)
2915 Wayzata Boulevard
Minneapolis, Minnesota
(763) 438-3032

*Attorney for Plaintiff*

Case 2:26-cv-00437-PP    Filed 03/17/26    Page 19 of 19    Document 1